IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

BRYAN D. MURPHY,

       Plaintiff,

v.                                                                                  CIVIL ACTION NO. 3:06-0669

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

**<u>MEMORANDUM ORDER</u>**

      In this action, filed under the provisions of 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

      Plaintiff filed his application on January 20, 2004, alleging disability commencing December 21, 2002, as a consequence of "injury to cervical spine, cervicobrachial syndrome, post concussion syndrome, cervical radiculpathy." On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

      At the time of the administrative decision, plaintiff was forty-one years of age and had completed the eleventh grade. His past relevant employment experience consisted of work as an installer of fiberoptic phone lines, painter and sandblaster. In his decision, the administrative law

judge found plaintiff suffered from "chronic neck pain and post-concussional syndrome with persistent symptoms including headaches, vertigo, and light-headedness," impairments which he considered severe. Though concluding that plaintiff was unable to perform his past relevant work,[1] the administrative law judge determined he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.18 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff has expressed complaints of extreme limitation due to severe symptoms, yet much of the objective testing has been negative. He suffered a work-related injury to his head and neck on October 11, 2001 which he alleges resulted in significant and constant neck pain, headaches, ringing in his ears, dizziness and numbness in his arms. As the Commissioner has noted, plaintiff was nonetheless able to work for fourteen months after his injury, remaining on the job until December 21, 2002, his alleged onset date. After a brief period of treatment with a chiropractor between October 16 and October 22, 2001, there is no indication of injury-related treatment until October 20, 2003 when plaintiff began seeing Dr. Deitch, a neurologist.[3] On exam, this physician documented findings of muscle spasm, tenderness and limited range of motion in the neck, decreased left biceps reflex and decreased sensation in both arms. He prescribed medication

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

[3] On June 18, 2003, plaintiff had an MRI of his cervical spine, interpreted as normal, but there is no indication he was receiving treatment at that time.

and recommended plaintiff receive chiropractic treatment. He also ordered testing, consisting of an MRI of the head (considered normal) nerve conduction studies of the upper extremities (considered "unremarkable"), and EMG of the upper extremities (considered normal).

As of April 30, 2004, physical exam findings were much the same as in October, and an EEG was ordered, which was also interpreted as normal. Reports reflect plaintiff was treated approximately once per week from March 9 to September 14, 2004 by Randall Krumm, DC. His reports reflect plaintiff's continued complaints of headaches, neck pain and arm and hand pain and numbness. They also demonstrate, and plaintiff testified, that he got some relief from his symptoms with chiropractic treatment; however, it was apparently only temporary.

Dr. B. Joseph Touma, an ear, nose and throat specialist, evaluated plaintiff in November 2004 at the request of Dr. Dietch and reported the exam itself was "essentially unremarkable," with hearing evaluation unchanged from previous testing and showing only "minimal" high frequency hearing loss. Dr. Touma reported that testing had indicated plaintiff had vestibular and visual deficits and opined he would be a good candidate for balance therapy; however, a summary of treatment at the Cabell Huntington Hospital Balance Center reflected plaintiff experienced no improvement in symptoms, despite attending therapy "off and on" from November 19, 2004 through September 15, 2005. The therapist related some of the previous testing was not valid, and he had encouraged plaintiff to give his best effort on subsequent tests. Dr. Touma reported on September 19, 2004 that the tests he had ordered were "inconclusive" and recommended a second opinion be obtained from Dr. Joseph Furman.

Dr. Furman examined plaintiff and conducted additional testing on December 1, 2005 and felt the results were suggestive of a "left-sided saccular lesion" and a "horizontal semicircular canal

abnormality." Though he recommended further testing, Dr. Furman did not make any treatment recommendations other than that plaintiff could be prescribed a low dose of a benzodiazepine.[4]

On March 30, 2006, Dr. Touma commented that plaintiff may have "long term problems" with his vestibular symptoms "with periods of unpredictability with relationship to his dizziness." Although there are no additional reports from Dr. Krumm in the record, an update and residual functional capacity assessment completed by him on April 5, 2006 reflect he continued to provide chiropractic treatment to plaintiff on a weekly basis. The assessment contains his opinion that plaintiff could only stand/walk or sit a total of two hours each per work day, which would preclude him from working an eight-hour day. None of the other treating physicians assessed plaintiff's work-related limitations.

In making his own assessment of plaintiff's residual functional capacity, the administrative law judge determined, consistent with 20 C.F.R. § 404.1529(b) that plaintiff had medically determinable impairments which could reasonably be expected to produce some of the symptoms he alleged.[5] In carrying out the second part of this analysis, the administrative law judge found plaintiff's credibility "quite poor" relative to his allegations of the intensity and persistence of his symptoms.[6]

In making this determination, the administrative law judge noted plaintiff's testimony was "very exaggerated;" was inconsistent with his own admitted daily activities which included driving,

---

[4]A class of drugs indicated principally to treat anxiety, insomnia and seizures. Secondarily, they are used to treat muscle spasm, panic attacks and symptoms of alcohol withdrawal and as preoperative medication. Attorney's Dictionary of Medicine, B-72-3 (2008).

[5]See, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

[6]20 C.F.R. § 404.1529(c)(1); Craig v. Chater, supra, at 595.

shopping, and occasional cooking and household chores; was largely unsupported by diagnostic test results; and was unsupported by reports from the Balance Center therapist and by Dr. Nutter, the consultative evaluator, both of whom indicated plaintiff did not put forth his best effort during testing. The administrative law judge also found it somewhat inconsistent that plaintiff could return to work shortly after his injury and continue working for fourteen months thereafter before stopping, allegedly due to increased symptoms.[7] Contrary to plaintiff's assertions, the Court finds the administrative law judge's analysis relative to plaintiff's credibility to be well-reasoned and consistent with the evidence.

After making his credibility findings, the administrative law judge considered opinion evidence from medical sources. He noted that Dr. Touma and Dr. Furman did not express opinions on plaintiff's functional capacity, other than a statement by Dr. Touma that plaintiff should not work "on/at heights" because of balance problems. Dr. Deitch also did not provide an assessment. The administrative law judge did not afford Dr. Krumm's assessment significant weight for several reasons. He felt this source relied too heavily on plaintiff's subjective complaints as the basis for his limitations and that his assessment was internally inconsistent as well as inconsistent with his treatment notes. Finally, the administrative law judge observed that, as a chiropractor, Dr. Krumm is not considered an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(d)(1).[8] Despite

---

[7]The court observes that an affidavit submitted by plaintiff to the Appeals Council documents problems he appears to have had with a past employer and with his union. Plaintiff speaks of events occurring through at least September 11, 2002, indicating he was laid off at that time. While he must have obtained another job afterward, nowhere in the affidavit does he indicate unwillingness or inability to work or make specific references to his symptomatology.

[8]According to Lee v. Sullivan, 945 F.2d 687, 691 (4th Cir. 1991), an opinion from a chiropractor can, "at best," qualify "only as a layman's opinion."

plaintiff's objection to this determination, the Court concludes that the administrative law judge's analysis and findings on this issue are clearly supported by substantial evidence in the record.

The administrative law judge chose to adopt the residual functional capacity assessment completed by the first state agency physician to review the record. This assessment reflects an ability to perform light level work requiring no more than occasional climbing of stairs, stooping, kneeling, crouching and crawling and no climbing of ladders, work at heights or around open, dangerous machinery or any exposure to temperature extremes. This finding is also well-supported by the record and takes into account the type and degree of impairments established by the evidence. The Court thus concludes that the Commissioner's decision has substantial evidentiary support and must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: June 22, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE